IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JIMMY C. MOORE,<br><br>    Plaintiff,<br><br>v.<br><br>CORIZON HEALTH SERVICES, IDAHO DEPARTMENT OF CORRECTIONS, MURRAY YOUNG and JOHN MIGLIORI<br><br>    Defendants. | Case No. 1:16-CV-229-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for summary judgment filed by defendants, along with a number of motions filed by plaintiff. The motions are fully briefed and at issue. For the reasons explained below, the Court will grant the motion for summary judgment and deny the motions filed by plaintiff.

## LITIGATION BACKGROUND

Plaintiff Moore, an inmate incarcerated with the Idaho Department of Corrections, (IDOC) filed this lawsuit against various health care providers at the prison, claiming that they were deliberately indifferent to his medical conditions. Moore complains that he was in pain from knee and shoulder problems, and that the defendants repeatedly denied his requests for surgery to alleviate the pain. Following an Initial Review Order, Moore's

**Memorandum Decision & Order – page 1**

remaining claims are that defendants Drs. Young and Migliori were deliberately indifferent to his knee and shoulder problems.

Moore first started complaining of pain in both shoulders and his left knee in September of 2015. His medical records show that he had surgery to repair a torn rotator cuff on his left shoulder in 1989 and again in 2013, and the same surgery on his right shoulder in 2013 and 2014.

In the first two months of his incarceration at the IDOC, Moore was treated by a Physician's Assistant and two Nurse Practitioners. They found that (1) Moore demonstrated a full range of motion in his shoulders; (2) x-rays of his shoulders showed an impingement – that is a rubbing between tendon and bone – and degenerative changes; (3) inflammation and the consequent pain would be reduced by a corticosteroid shot (Kenalog); and (4) conservative treatment including physical therapy was indicated rather than surgery. Moore refused any conservative treatment and demanded surgery.

Moore was first seen by defendant Dr. Migliori on November 9, 2015. Dr. Migliori is employed by Corizon as a medical doctor at the prison. *See Dr. Migliori Declaration (Dkt. No. 25-3)* at p. 2. On that day, Moore complained of shoulder pain; there was no treatment requested or given for knee pain. Moore believed his rotator cuffs had been torn during his arrest and he wanted surgery to repair the injuries. Dr. Migliori responded that surgery was not the best option until more conservative treatment options – like physical therapy, intra-articular steroid injections, and pain medications – were tried. *Id.* at ¶ 11. Dr. Migliori based this opinion on the fact that Moore could perform the activities of daily life, and that Moore's prior shoulder surgeries made it less likely

**Memorandum Decision & Order – page 2**

that surgery would be successful. *Id.* Moore rejected the option of pursuing conservative treatments.

Moore returned to Dr. Migliori about three months later, again for shoulder pain. Moore wanted an MRI of his shoulders and surgery on his rotator cuffs, but Dr. Migliori again recommended conservative treatment for the same reasons. In addition, Moore suffered from malignant hyperthermia, a rare disorder that produces a dangerous reaction to general anesthesia, causing high body temperature, severe muscle spasms, and a fast heart rate. *Id.* at ¶ 13. Dr Migliori concluded that "[w]hile Mr. Moore's susceptibility to malignant hypothermia did not categorically rule out surgical intervention, it was an additional reason to first try conservative treatment options." *Id.* In both visits, Dr. Migliori prescribed Tylenol, the only pain medication he would take.

After this visit, Dr. Migliori consulted (by telephone) with defendant Dr. Murray Young, about Moore's shoulder problems. Dr. Young was then Corizon's Regional Medical Director and the supervisor of Dr. Migliori. *Id.* at ¶ 12. Based on the information Dr. Young received from Dr. Migliori, Dr. Young agreed that conservative treatment should be attempted first. *See Young Declaration (Dkt. No. 25-8)* at ¶ 6.

Over the next nine months, Moore was seen dozens of times by six different health care providers for his knees and shoulders. The result was the same: Moore demanded surgery and rejected the recommendations that conservative treatment – including physical therapy and corticosteroid injections – must be attempted first. The providers all noted that Moore gesticulated in anger with no apparent pain, took his shirt off with no

obvious pain or range-of-motion difficulty, and continued to be able to perform his activities of daily living. *Migliori Declaration, supra* at ¶ 16.

In November of 2016, Moore finally agreed to meet with a physical therapist. He went to four sessions before the therapist determined that Moore was not a good candidate for physical therapy due to his unwillingness to participate. *Id.* at ¶ 21.

In December of 2016, Moore was referred to an orthopedist, Dr. Homaechevarria. (Id. at ¶ 22). Dr. Homaechevarria prescribed corticosteroid injections every four to six months in his knee, with further follow up if that treatment is unhelpful. Although Moore had rejected such injections when they were recommended by Corizon health care providers, he accepted them from Dr. Homaechevarria. Dr. Homaechevarria did an MRI of Moore's shoulder and it confirmed a rotator cuff tear. *See Medical Records (Dkt. No.*

Moore was then referred to another orthopedic surgeon, Dr. Roman Schwartsman, for evaluation of surgical options on Moore's shoulder. Dr. Schwartsman stated that they could proceed with a surgical option, but that the surgery may very well not be successful due, in part, to arthritic changes in Mr. Moore's shoulder. *Id.* at ¶ 23.

## LEGAL STANDARD

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The two-part test for deliberate indifference requires Moore to show (1) "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton

**Memorandum Decision & Order – page 4**

infliction of pain," and (2) "the defendant's response to the need was deliberately indifferent." *Id.* at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Deliberate indifference is a high legal standard," *Simmons v. Navajo County Ariz.,* 609 F.3d 1011, 1019 (9th Cir. 2010), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett,* 439 F.3d at 1096. Negligence or medical malpractice do not rise to the level of deliberate indifference. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

## ANALYSIS

Moore's basic claim is that the defendants were deliberately indifferent to his serious medical needs when they recommended a course of conservative treatment instead of immediate surgery for his knee and shoulders. The first weakness in this claim

**Memorandum Decision & Order – page 5**

is that the record conclusively shows that Moore never asked Dr. Migliori to treat his knee and never received any treatment for his knee from Dr. Migliori. Dr. Young likewise was never asked to treat Moore's knee and never did so. While Dr. Young was the supervisor of medical care at the prison, there is no evidence that he was ever made aware of Moore's knee problems or had any involvement whatsoever in the treatment of Moore's knee by others. Given this record, no reasonable juror could find that Dr. Migliori and Dr. Young were deliberately indifferent to Moore's knee problems.

Regarding Moore's shoulder problems, there is no evidence in this record that the decision to pursue conservative treatment constituted deliberate indifference. Moore had previously undergone two surgeries on each shoulder and suffered from malignant hyperthermia, circumstances that made surgery somewhat more risky and less likely to be successful. All the medical records – from several different medical providers over a ninth month period – demonstrate that Moore could perform daily activities and was able to do things like remove his shirt with no obvious pain or range-of-motion difficulty. Moore consistently rejected conservative treatments and when he finally did participate in physical therapy, the therapist ended the treatment after only four sessions because Moore was not cooperating.

There is no medical opinion in this case that surgery should have been done immediately; even if there was such an opinion contrary to that of Drs. Young and Migliori, a disagreement over the efficacy of pursuing conservative treatment before surgery does not constitute deliberate indifference. *See Rodriguez v. Cate*, 2011 WL 13196253 (9th Cir. 2012) (unpublished) (holding that disagreement between medical

**Memorandum Decision & Order – page 6**

providers over providing conservative treatment before surgery did not constitute deliberate indifference); *Aleo v. Smith*, 2016 WL 8731374, at *13 (E.D. Cal. Jan. 15, 2016) (holding that disagreement about whether to pursue conservative care rather than surgical intervention, particularly where there were legitimate doubts about the likelihood that surgical intervention would be successful, did not constitute deliberate indifference). Here, there were legitimate doubts about the likelihood that surgery would be successful. Indeed, the record shows that Moore "received thorough and careful medical treatment from his physicians, unlikely to constitute medical malpractice, negligence, or gross negligence, let alone the knowing disregard of an excessive risk to inmate health or safety." *White v Lee,* 2013 WL 782357 (9th Cir. March 4, 2013). Because there is no genuine issue as to any material fact, and defendants are entitled to judgment as a matter of law, the Court will grant defendants' motion for summary judgment.

**Other Motions**

Moore has filed a motion to extend discovery and a motion to compel discovery. Both motions were filed more than three months after the deadline for discovery had passed, and Moore fails to provide an explanation for the late filing. These two motions will be denied. The Court has considered Moore's response brief so his motion in that regard is moot.

**ORDER**

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion for summary judgment (docket no. 25) is GRANTED.

IT IS FURTHER ORDERED, that the motion to extend discovery (docket no. 31) and the motion to compel discovery (docket no. 30) are DENIED.

IT IS FURTHER ORDERED, that the motion regarding the summary judgment brief (docket no. 29) is DEEMED MOOT as the Court has considered the brief.

DATED: September 27, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge